UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JEREMIAH D. ACKERMAN,                          Case No. 3:11-cv-06175-HA

          Plaintiff,

                                          OPINION AND ORDER

     v.

COOS COUNTY, ANDY JACKSON,
DEPUTY CHRISTENSEN, DEPUTY
GREEN, DEPUTY KRAMER, and
JOHN DOES NUMBER 1 through 10,

          Defendants.

_____

HAGGERTY, District Judge:

      Plaintiff Jeremiah D. Ackerman brings suit against defendants Coos County, Andy

Jackson (former Coos County Sheriff), Deputy Christensen, Deputy Green, Deputy Kramer, and

John Does Number 1 through 10 (collectively "defendants"), for deliberate indifference to serious

medical needs and negligence regarding plaintiff's medical care while housed at the Coos County

Jail. Defendants have moved for summary judgment on all claims. Oral argument was held on

October 8, 2013. For the following reasons defendants' Motion for Summary Judgment [32] is

granted.

1 - OPINION AND ORDER

## BACKGROUND

The following facts are drawn from the record and are construed in the light most favorable to plaintiff, the non-moving party. Plaintiff is a thirty-two year old diabetic with Type 1 diabetes. He was diagnosed with diabetes at the age of eight and has been managing his diabetes with insulin injections since that time. Plaintiff uses both Lantus and Humulin R (Humulin) types of insulin to manage his blood sugar. Lantus is a long acting insulin and plaintiff uses it once a day regardless of his blood sugar level. Plaintiff typically injects Lantus at 11:00 p.m. each night. Humulin is a short-acting insulin used to control blood sugar quickly and plaintiff's use of it depends on his blood sugar readings and eating schedule.

Plaintiff was housed in the Coos County Jail from May 22, 2009 until May 26, 2009. At the time of his incarceration, Coos County Jail contracted with Dr. William Davis for inmate medical care. Although corrections officers were trained in first aid and CPR, matters of medical judgment were "the sole province of the responsible physician," who, at that time, was an independent contractor. Ex. 117 to Franz Decl., Jail Policy 3301.0000, 3302.0000. While in the jail, plaintiff tested his own blood sugar levels and administered insulin to himself in the presence of corrections officers. Corrections officers maintained control of the insulin and testing apparatus at all other times. When plaintiff tested his blood sugar, the blood sugar reading would be recorded by the corrections officer observing plaintiff.

For purposes of this lawsuit, the first three days and nights of plaintiff's stay in the Coos County Jail passed without incident. Plaintiff had access to food acceptable to diabetics, Humulin at appropriate times, and was able to administer Lantus to himself each night at approximately 10:30 p.m. On May 25, 2009, Deputy Christensen was on duty from 3:59 p.m.

2 - OPINION AND ORDER

until 11:59 p.m. as the pod deputy for plaintiff's block. At 4:19 p.m., plaintiff tested his blood sugar and it was recorded as being 269 mg/dL. At that time, plaintiff administered himself Humulin. Deputy Green came on duty at 9:00 p.m. to assist Deputy Christensen and took over as the pod deputy for plaintiff's block when Deputy Christensen went off duty. That evening, plaintiff was waiting in the jail's day room when it was time for his Lantus injection. Plaintiff used the day room intercom to alert the deputies that he had not had his nightly blood sugar test. Deputy Christensen told plaintiff that he would have to wait. Shortly thereafter, day room hours ended and plaintiff returned to his cell. Plaintiff reports falling asleep thinking that he would be called out of his cell in order to test his blood sugar and administer himself Lantus. However, no deputy came to retrieve plaintiff and he did not receive his nightly Lantus injection.

That evening Deputy Green performed security rounds at 1:04 a.m. and at 2:23 a.m. During a security round, the deputy walks by each cell in the pod and looks through the window to make sure there is nothing out of the ordinary. Deputy Green did not note anything as being unusual during his two security rounds.

Plaintiff awoke sometime late in the evening or early in the morning feeling weak and disoriented. He "attempted to bang on the door . . . as hard as [he] could" and was moaning "help." Ackerman Decl. ¶ 14. Plaintiff then vomited and either fell asleep or passed out before getting the attention of any deputies. When he next awoke at approximately 4:00 a.m., plaintiff was on the floor, had hit is head, and was bleeding from a cut between his eye and his temple. He felt disoriented, weak, and fearful. He was able to get the attention of the inmate in the neighboring cell who was able to get the attention of corrections officers. Deputy Green responded to plaintiff's cell and plaintiff told him that he was bleeding and needed help. Deputy

Green said something to the effect that "[w]e gotta clean it up" and "[g]et your stuff together, we have to go." Ackerman Decl. ¶ 19.

Plaintiff gathered his belongings and was taken to the detainment cell in booking where he told Sergeant Kramer something like "I'm not feeling well, I'm sweating, I'm feeling like I have to go to the bathroom." Ackerman Decl. ¶ 19. Sergeant Kramer allowed plaintiff to go use the shower and bathroom. When plaintiff returned, officers wiped off the cut on plaintiff's head but it continued to bleed. Officers applied a band-aid, and said that was the best they could do. Plaintiff was then able to test his blood sugar and it was recorded as being 114 mg/dL. The parties agree that a blood sugar reading of 114 mg/dL is within the normal range. Although plaintiff had access to insulin, he did not choose to use it. Sergeant Kramer called Dr. Davis to inquire about plaintiff's medical state and blood sugar and was advised that plaintiff could be transferred.

Plaintiff was placed back in the detainment cell and at 4:30 a.m. someone passed him a breakfast of french toast, syrup, coffee, and peanut butter. Plaintiff said something to the effect that he could not eat that meal because it was all sugars and he is a diabetic. The person responded that there was not time to get something else because plaintiff was about to be transferred. Plaintiff ate a tablespoon of peanut butter and was then transferred out of the Coos County Jail at approximately 5:00 a.m. Officer Green drove the transport van from Coos County to Douglas County. Plaintiff was out of Coos County's custody by approximately 7:00 a.m. The transport continued with stops in Lane County and Marion County before plaintiff arrived at the Coffee Creek Correctional Facility for prisoner intake. Plaintiff was not presented with the opportunity and did not request the opportunity to test his blood sugar or use insulin at any time during his transport. At approximately 7:00 p.m., plaintiff tested his blood sugar and it was

4 - OPINION AND ORDER

recorded as being 590 mg/dL, a measurement suggesting serious problems.  Plaintiff then used

his insulin.  Plaintiff contends that part of the delay in receiving his insulin was due to the fact

that the Coos County Jail failed to include his medical records with is personal property when he

was transferred even though he was transported with his insulin.

Plaintiff contends that the missed Lantus injection resulted in the health problems

experienced during the night and contends that his cut should have received stitches.  However,

plaintiff offers no medical evidence supporting either contention.  All he offers is his own

declaration, which includes hearsay statements of others (not defendants) suggesting that he

should have had stitches.  The only medical evidence of record is that a missed Lantus injection

"is not a cause for clinical alarm since a rise in blood sugar is slow" and the "treatment for an

omitted dose is to make sure the next dose is given."  Dordevich Decl. at 3.  Moreover, the

symptoms described by plaintiff of becoming dizzy and passing out "are not consistent with

missing a dose of [Lantus]."  *Id.* at 4.  Additionally, the use of a band-aid on a cut such as the one

sustained by plaintiff is an acceptable medical practice.

## STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  Summary judgment is improper if material factual issues exist for trial.  *Warren v. City of*

*Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the initial burden of demonstrating the absence of a genuine

dispute of material fact for trial, but it need not disprove the other party's case.  *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, the

adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,

5 - OPINION AND ORDER

but must set forth specific facts showing that there is a genuine dispute for trial. *Id.* at 248-49. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (citations omitted).

The court must view the evidence submitted on summary judgment in the light most favorable to the non-moving party. *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824-25 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine factual dispute should be resolved against the moving party. *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).

## ANALYSIS

Plaintiff asserts three claims for relief. Plaintiff's first and second claims are brought pursuant to 42 U.S.C. § 1983. Plaintiff's first claim asserts that the individually named defendants were deliberatively indifferent to plaintiff's serious medical needs in violation of the U.S. Constitution's Eighth and Fourteenth Amendments. Plaintiff's second claim is for municipal liability pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), and contends that Coos County failed to adequately train the Coos County Jail officers. Plaintiff's third claim is for common law negligence under Oregon law.

### 1.    Deliberate Indifference to Serious Medical Needs

"[S]ection 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quotations and citations omitted). In *Graham*, the Supreme Court set forth what is known as the "more-specific-provision rule." *Co. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). Pursuant to the more-specific-provision rule, "where a particular Amendment provides

6 - OPINION AND ORDER

an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 842; (citation and quotations omitted). Here, plaintiff's deliberate indifference claim must be analyzed pursuant to the Eighth Amendment.

To establish a claim for a violation of the Eighth Amendment in the medical context, a plaintiff must propound facts that would allow a reasonable jury to find that the acts or omissions of the defendants were "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). It is "such indifference that can offend evolving standards of decency in violation of the Eighth Amendment." *Id.* (citations and quotation omitted). "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Id.* at 105-06 (quotation omitted). A claim for "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. An individual defendant cannot be found liable under these standards unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Defendants contend that the facts as alleged by plaintiff fail to support a deliberate indifference claim against any of the individually named defendants. In the alternative, defendants contend that the individually named defendants are entitled to qualified immunity.

In support of his deliberate indifference claim and to support the proposition that diabetes is a serious medical condition, plaintiff cites *Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003). In that case, the diabetic plaintiff, Lolli, was arrested on an outstanding warrant on an

7 - OPINION AND ORDER

unpaid parking ticket. *Id.* at 412. Lolli told the arresting officer that he was diabetic, ill, and needed to eat as soon as possible. He relayed the same information to the screening nurse during intake who assured him he would get a snack soon. *Id.* He was then placed in a cell for approximately five hours without food or insulin. Lolli then told a deputy entering the holding cell that he was a diabetic and was not feeling well and asked for the snack he had been promised. The deputy responded by asking Lolli, "'Where the fuck do you think you are, the Holiday Inn?'" *Id.* at 416. Lolli was then beaten by several guards and pepper sprayed. During the beating, Lolli sustained multiple abrasions and contusions as well as a perforated ear drum and three fractured ribs. *Id.* at 416-17. The Ninth Circuit found that "[l]eaving a diabetic . . . without proper food or insulin when it is needed creates an 'objectively, sufficiently serious' risk of harm" and "a constitutional violation may take place when the government does not respond to the legitimate medical needs of a detainee whom it has reason to believe is a diabetic" *Id.* at 420. In light of the evidence that the officers knew Lolli to be a diabetic and in light of their indifference to "his obviously sickly appearance and his explicit statements that he needed food" the Ninth Circuit concluded that a jury could "find that the officers consciously disregarded a serious risk to Lolli's health." *Id.* at 421.

In this case it is clear that the individual defendants were aware that plaintiff was a diabetic. However, there is no evidence to support the proposition that a missed dose of Lantus placed plaintiff at any serious risk to his health or was in anyway related to his health problems during the evening in question. Additionally, there is no evidence that the individual defendants were deliberatively indifferent to plaintiff's health problems regardless of whether they were serious. Rather, in the light most favorable to plaintiff, the facts demonstrate, that Deputy Christensen accidentally failed to provide plaintiff with an opportunity to use Lantus before

going off duty. Thereafter, plaintiff suffered from health problems in the evening that are unexplained by a missed dose of Lantus.

There is no evidence that any of the individual defendants were aware of plaintiff's health problems until approximately 4:00 a.m. when Deputy Green responded to plaintiff's cell after another inmate was able to get his attention. There is no evidence that plaintiff asked for insulin or food at this time or even explained his problems as being related to his diabetes. Deputy Green had plaintiff moved to a different cell where Sergeant Kramer allowed plaintiff to use the bathroom and shower at his request. Again, there is no evidence that plaintiff explained his health problems as being related to his diabetes. Shortly after showering and using the bathroom as plaintiff requested, Sergeant Kramer helped plaintiff clean his cut and applied a band-aid to it. Plaintiff tested his blood sugar, which was recorded as normal, and was then given the opportunity to use insulin if he wanted to. Plaintiff chose not to administer himself insulin. Sergeant Kramer confirmed with a physician that plaintiff was fit to transfer. Plaintiff was then provided with food by an unidentified individual. That food was largely unacceptable for diabetics and plaintiff chose not to eat, except for some peanut butter, because he had not taken any insulin. There is no evidence that plaintiff requested his insulin when presented with the food.

Plaintiff was then transported without his medical records, but with his insulin. Once plaintiff arrived at Douglas County he was no longer in the care of Coos County authorities. Although his blood sugar eventually reached a dangerous level, it was not until several hours after plaintiff left Coos County custody and it was not until after passing through additional counties where it does not appear plaintiff requested or was provided food or insulin.

Although there is room for disagreement regarding whether the individual defendants

addressed plaintiff's health problems appropriately, no reasonable jury could conclude that any of the individual defendants acted with deliberate indifference to plaintiff's needs, much less any serious medical risks. Additionally, there is no evidence that any of the individual defendants caused plaintiff any harm. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (holding that for § 1983's seeking money damages, "the inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation"). Because there is insufficient evidence to support a claim for deliberate indifference to serious medical needs against any defendant, the court does not reach the question of qualified immunity and summary judgment is awarded to defendants on plaintiff's first claim for relief.

### 2.    Municipal Liability

Plaintiff's second claim for relief asserts a municipal liability claim against Coos County pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658. Plaintiff's Complaint alleges that Coos County failed to train its officers regarding the administration of insulin to diabetic inmates and failed to train its officers regarding the forwarding of medical records upon transfer. To establish municipal liability under § 1983 on a failure to train theory, plaintiff must prove that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Oh., v. Harris*, 489 U.S. 378, 390 (1989).

Plaintiff has offered no evidence whatsoever regarding training or lack thereof at Coos County. In the absence of such evidence, summary judgment is awarded to defendants on plaintiff's second claim for relief.

////

**3.     Negligence**

As with plaintiff's *Monell* claim, plaintiff has offered no specific evidence regarding the negligence claim except for plaintiff's declaration.  In light of the fact that plaintiff has submitted no medical evidence in his support, there is no evidence in the record that would allow a reasonable jury to find in plaintiff's favor with respect to the element of causation requisite for a successful negligence claim.  Defendants are awarded summary judgment on plaintiff's third claim for relief.

**CONCLUSION**

For the reasons provided, defendants' Motion for Summary Judgment [32] is GRANTED and this case is dismissed with prejudice.

IT IS SO ORDERED.

Dated this ⟋ day of November, 2013.

ANCER L. HAGGERTY
United States District Judge